# IN THE COURT OF APPEALS OF IOWA

No. 17-1619
Filed December 19, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CLARENCE D. BLANCHARD,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Emmet County, Ann M. Gales, District Associate Judge.


        The defendant appeals the denial of his motion to suppress.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.


        Considered by Danilson, C.J., and Potterfield and Doyle, JJ.

**POTTERFIELD, Judge.**

Following a conviction for operating while intoxicated, first offense, Clarence Blanchard appeals the district court's denial of his motion to suppress. Blanchard argues there was neither a reasonable articulable suspicion nor probable cause to support the police officer's investigatory stop of his vehicle.

"Both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution prohibit unreasonable searches and seizures by the government." *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013). "A traffic stop is unquestionably a seizure . . . ." *Id.* at 292. "Yet, this protection does not prohibit police from temporarily detaining an individual when they have reasonable grounds to believe criminal activity is afoot." *State v. DeWitt*, 811 N.W.2d 460, 468 (Iowa 2012). Such stops are generally referred to as *Terry* stops. *See Terry v. Ohio*, 392 U.S. 1, 20–27 (1968). The State bears the burden of proving by a preponderance of the evidence that the requisite suspicion existed to justify the *Terry* stop. *See Tyler*, 830 N.W.2d at 293. If the State fails to carry its burden, "all evidence obtained at the stop must be suppressed." *Id.* We review the district court's suppression ruling de novo. *State v. Watts*, 801 N.W.2d 845, 850 (Iowa 2011).

Here, off-duty deputy Thomas Bauler was putting gas in his car at an area gas station in the early morning hours when he noticed an SUV at the gas station that was playing very loud music. Deputy Bauler approached the vehicle, showing his police badge to a passenger in the backseat who had the window rolled down; the driver was not in the vehicle at the time Deputy Bauler approached. As he talked to the backseat passenger, Deputy Bauler recognized the smell of

marijuana emanating from the vehicle. According to his testimony, because he was off-duty and not in his uniform, driving his squad car, or carrying his weapon, he did not take any steps to prevent the vehicle from leaving after the driver returned. However, as the vehicle left the gas station, at 2:55 a.m., Deputy Bauler called the local dispatch and reported his observations as well as the license plate number and description of the vehicle. Deputy Bauler then began driving toward his home. On the way, he drove by Detective Nathaniel Dunlavey, who was on duty and was looking for the SUV. Deputy Bauler flagged Detective Dunlavey down and shared the information he had previously reported to dispatch. Then, at 3:16 a.m., based solely on the report from Officer Bauler, Detective Dunlavey initiated a stop of the SUV. Once he made contact with the driver—Blanchard— Detective Dunlavey suspected Blanchard was driving while intoxicated. Later testing established that Blanchard's blood alcohol content was .194.

On appeal, Blanchard maintains there was not reasonable suspicion to stop his vehicle because "the alleged odor of marijuana coming from occupants in a vehicle over twenty minutes prior to the stop does not provide a reasonable basis that criminal activity was afoot at the time of the stop." He also provides a possible non-criminal explanation for the smell of marijuana coming from the vehicle, claiming one of the passengers could have stood next to a person who was smoking marijuana before entering the car.

But "reasonable cause may exist to investigate conduct which is subject to a legitimate explanation and turns out to be wholly lawful." *State v. Richardson*, 501 N.W.2d 495, 497 (Iowa 1993). Moreover,

> [r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Alabama v. White*, 496 U.S. 325, 330 (1990). While an "unverified tip from [a] known informant might not [be] reliable enough to establish probable cause, [the Supreme Court] nevertheless found it sufficiently reliable to justify a *Terry* stop." *Id.* (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)).

Here, an off-duty officer, who is trained to detect the odor of marijuana, recognized the smell of marijuana emanating from the vehicle when he spoke to one of the passengers through an open window. Our case law establishes that this fact provides more than just a hunch of criminal wrongdoing. *See Watts*, 801 N.W.2d at 854 ("Our court has . . . held that a trained officer's detection of a sufficiently distinctive odor, by itself or when accompanied by other facts, may establish probable cause."); *see also State v. Eubanks*, 355 N.W.2d 57, 59 (Iowa 1984) (holding "the patrolman clearly had sufficient probable cause to search the vehicle" because the "patrolman smelled the odor of marijuana drifting from the car.").

And although Deputy Bauler is not the officer who subsequently initiated the stop,[1] the approximately twenty-minute delay between his report of the information

---

[1] While Blanchard's appeal suggests a challenge to the district court's conclusion that the delay in time between Officer Bauler's report and the stop did not affect the legality of the stop, we do not understand him to be raising any challenge regarding the reliability of the "tip" from Officer Bauler. *See, e.g.*, *State v. Walshire*, 634 N.W.2d 625, 626 (Iowa 2001) (considering whether a tip from a citizen informant was sufficiently reliable to provide reasonable suspicion to justify a stop).

to dispatch and Detective Dunlavey's stop of the vehicle does not render the information stale or incapable of supporting an investigatory stop. Our case law typically discusses "staleness" in relation to applications for search warrants, but we believe the case law is also applicable here. We acknowledge "[a]llegations of criminal conduct may be so distant in time as to provide no probable cause," but "[w]hether information is stale depends on the circumstances of each case." *State v. Randle*, 555 N.W.2d 666, 670 (Iowa 1996). And twenty minutes is not a significant period of time. *See State v. Gogg*, 561 N.W.2d 360, 367–68 (Iowa 1997) (concluding a period of six days between the observations of criminal acts and the execution of a search warrant was not a significant lapse of time). Considering the totality of the circumstances, Deputy Bauler's recognition of the smell of marijuana emanating from Blanchard's vehicle provides a reasonable suspicion of criminal activity to stop the vehicle approximately twenty minutes later.

We affirm the district court's denial of Blanchard's motion to suppress.

**AFFIRMED.**