# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2717

_____

United States of America,              *
                                       *
            Plaintiff – Appellee,      *
                                       *    Appeal from the United States
     v.                                *    District Court for the
                                       *    Northern District of Iowa.
David Nieman,                          *
                                       *
            Defendant – Appellant.     *

_____

Submitted: February 14, 2008
Filed: April 2, 2008

_____

Before BYE, RILEY, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

David Nieman appeals the district court's[1] denial of two pretrial motions: one to dismiss his indictment on the ground of outrageous government misconduct, and one to suppress evidence seized from a search of his residence pursuant to two search warrants. We affirm.

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa, accepting the Report and Recommendation of United States Magistrate Judge Paul A. Zoss.

# I

In early April 2006, officers with the Iowa Division of Narcotics Enforcement (DNE) began working with Jill Siems pursuant to a cooperation agreement. She agreed to assist law enforcement in gathering evidence of illegal drug activity against Nieman and three other men. Her cooperation agreement specified she could not use drugs or otherwise break the law.

Under the direction and surveillance of DNE, Siems attempted two controlled drug buys from Nieman in early April 2006, but was unsuccessful. He knew she had criminal charges pending and was reluctant to sell her any drugs. She made a third attempt to buy drugs from him on May 3, 2006. At that time, Siems used drugs with Nieman, and he gave her a small quantity of drugs to take with her. She informed DNE officers of use of drugs with Nieman, explaining the use of drugs with Nieman was part of their history together, and felt she needed to use drugs with him before he would sell her drugs. The officers decided not to terminate Siems' cooperation agreement, despite her violation of one of its terms. They reminded her not to use drugs. The following week, Siems met with Nieman on two occasions. On May 13, 2006, the second occasion, he sold her an eightball of methamphetamine for $350.00.

On May 14, 2006, DNE officer John Graham applied for a search warrant to search Nieman's residence. The application included his sworn affidavit, which related information about Nieman's drug activity received from five separate, reliable, confidential informants (CIs), including Siems. None of the CIs were anonymous. The affidavit specifically stated Officer Graham or other law officers had spoken with the informants directly and were able to assess their credibility. The CIs' statements corroborated each other's statements. At least three CIs had provided information in other cases, some testifying before a grand jury.

Officer Graham obtained and executed the warrant the following day. Law enforcement officers seized approximately five ounces of methamphetamine, over $6,000.00 in cash, documents showing a large number of cash expenditures, a digital scale, drug use and distribution paraphernalia, several firearms and ammunition. Officers found, but did not seize, a large number of vehicles, snowmobiles, motorcycles, expensive tools, car parts, and other assets. Later that day, Officer Graham applied for and obtained a second search warrant for the purpose of seizing those additional assets.

After a grand jury's initial indictment, Nieman filed two pre-trial motions. The first was a Rule 12(b) motion to dismiss the indictment on the ground of outrageous government misconduct. The second was a motion to suppress the evidence on the ground it was obtained through an illegal search and seizure.

The grand jury subsequently returned an eight count superseding indictment charging Nieman with: conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846, three counts of distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), being an unlawful drug user in possession of firearms in violation of 18 U.S.C. § 922(g)(3), possession of firearms in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c), and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956.

The district court accepted the recommendation of the magistrate judge and entered an order denying Nieman's motion to dismiss and motion to suppress. A jury found him guilty of all charges except one count of distribution of methamphetamine (Count 3). The district court sentenced him to 295 months imprisonment. This appeal followed.

II

Nieman first argues the district court improperly denied his pretrial motion to dismiss the indictment due to outrageous government misconduct. He asserts the conduct of law enforcement agents was outrageous and violated a universal sense of justice when they allowed their confidential informant, Seims, to use methamphetamine during an attempted controlled buy of narcotics. He next argues the district court improperly denied his pretrial motion to suppress the evidence seized from his residence pursuant to two search warrants. He asserts the warrants were invalid because they were overbroad, based on stale information, issued without probable cause, and were predicated on outrageous government misconduct.

A

During review of a district court's denial of a motion to dismiss an indictment for alleged outrageous government misconduct, we review the district court's factual findings for clear error and its legal conclusions de novo. United States v. King, 351 F.3d 859, 867 (8th Cir. 2003). "While there may be circumstances in which the conduct of law enforcement agents is so outrageous that due process bars the government from invoking the judicial process to obtain a conviction, the level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court." Id. (citing United States v. Russell, 411 U.S. 423, 431-32 (1973)) (internal quotation omitted). We have previously held, "where a person is predisposed to commit an offense, 'investigative officers and agents may go a long way in concert with the defendant without being deemed to have acted so outrageously as to violate due process.'" United States v. Musslyn, 865 F.2d 945, 947 (8th Cir. 1989) (quoting United States v. Irving, 827 F.2d 390, 393 (8th Cir. 1987)).

-4-

Nieman argues DNE officers expressly or implicitly authorized Siems to use drugs in order to buy drugs from him. He cites the officers' failure to terminate her cooperation agreement as proof they condoned such illegal activity. The district court rejected this argument and found the government did not condone Siems's use of methamphetamine. Nothing in the record indicates the district court erred in its factual findings. The cooperation agreement specifically prohibited her from engaging in drug use. Moreover, the officers testified when she self-reported this violation, they discussed termination of her cooperation agreement before deciding to give Siems a second chance. They again gave her explicit instructions, which she subsequently followed, never to use drugs with Nieman again.

Thus, the relevant inquiry is whether the government's failure to terminate Siems's cooperation agreement on the basis of her single, unauthorized use of drugs, constitutes government misconduct "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." Russell, 411 U.S. at 431-32. We conclude it does not. We have recognized "the use of unsavory informants is quite often the nature of the beast in police investigations." King, 351 F.3d at 868. In this case, the government did not direct or encourage Siems's drug use; her misconduct can not be attributed to the government. See United States v. Barrera-Moreno, 951 F.2d 1089, 1092 (9th Cir. 1991) ("Due process is not violated unless the conduct is attributable to and directed by the government."). We hold the government did not violate the defendant's right to due process when it allowed its informant to continue assisting narcotics investigators after she engaged in illegal drug use.

B

When determining whether a district court erred by denying a motion to suppress evidence, we review the district court's factual findings for clear error and its legal determinations de novo. United States v. Lucas, 499 F.3d 769, 775 (8th Cir.

2007).  Nieman argues the first search warrant was overbroad, issued upon stale information, and premised on outrageous government misconduct.  He also argues neither search warrant was supported by sufficient probable cause.  We examine each of these arguments in turn.

Nieman argues the first search warrant was defective because it failed to identify the items to be seized with sufficient specificity.  The Fourth Amendment prohibits general search warrants and requires a description, with particularity, of the items to be seized.  Andresen v. Maryland, 427 U.S. 483, 480 (1976).  An affidavit may provide the necessary particularity for a warrant if it is incorporated into the warrant, attached to the warrant, or present at the search.  Rickert v. Sweeney, 813 F.2d 907, 909 (8th Cir. 1997).

Nieman complains the warrant's description of the property placed no limits on the category of records, documents, papers, notes or photographs to be seized.  We disagree.  The warrant described such property as "which are evidence of the illegal possession, use, possession with intent to deliver, or delivery of controlled substances; or shows an association of individuals involved in the illegal possession, use, possession with intent to deliver, or delivery of controlled substance."  This is a specific limitation.  In addition, Officer Graham described the types of records, documents, papers, notes and photographs he sought in subparagraphs (A), (B), (D), (E), (F), (L), and (M) of his affidavit, where he explained how such property was relevant to drug trafficking.  The first search warrant was not overbroad.

Nieman next argues the first search warrant was based on stale information. "We have no 'fixed formula' for deciding when information has become stale, but we consider the nature of the crime being investigated and the property to be searched." United States v. Stevens, 439 F.3d 983, 988 (8th Cir. 2006) (citation omitted) (upholding search warrant for drugs where there was a continuing narcotics operation and the place to be searched was a residence).  The investigation into drug trafficking

at his residence was ongoing and included information collected over several years. While some of the information contained in Officer Graham's affidavit originated in years past, the affiant had himself directed and observed a controlled buy of methamphetamine from the defendant at his residence only one day before the officer applied for the first search warrant. Considering the totality of the information provided to the magistrate judge, we conclude the search warrant was not based on stale information.

Nieman goes on to argue the first search warrant was premised on outrageous government misconduct and was therefore invalid. Because we find the government did not engage in outrageous misconduct, we dismiss this argument.

Last, Nieman argues neither search warrant was supported by sufficient probable cause. Probable cause to search exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). A magistrate reviewing an application for a search warrant employs a totality-of-the-circumstances analysis and makes a practical decision based on such factors as the veracity of the affidavit and the basis of knowledge of any person supplying hearsay information. Id. As a reviewing court, our obligation is to allow substantial deference to a magistrate's determination of probable cause. Id. at 236.

When information supplied by an informant forms the basis for probable cause in a warrant, the "core question in assessing probable cause . . . is whether the information is reliable." United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993). Informants without a track record of providing reliable information may be deemed reliable if their information is independently corroborated by other evidence. United States v. Robertson, 39 F.3d 891, 893 (8th Cir. 1994); Williams, 10 F.3d at 593.

In this case, five informants, none of whom were anonymous, provided detailed information about Nieman. Officer Graham's affidavit specifically stated he or other law officers had spoken with the informants directly and were able to assess their credibility. See Robertson, 39 F.3d at 893 (stating the reliability of a tip is enhanced when an agent meets personally with the informant to assess his credibility). The affidavit also described specific situations in which many of the informants previously provided reliable information later used to convict other drug traffickers and money launderers.

Furthermore, much of the informants' information was first-hand and was corroborated by information from other CIs. For example, the fifth CI, Siems, had purchased drugs from Nieman and had seen him with a 9mm pistol. The second CI provided a first-hand account of how the defendant told him about having developed a new source of drugs in Nevada. The third CI, who also provided a first-hand account, saw the defendant in possession of a 9mm pistol. He also reported seeing a person, driving a car bearing Nevada license plates, unload a shipment of methamphetamine at Nieman's house. Considering the totality of the information provided to the magistrate judge, we conclude there was probable cause sufficient to issue the warrant.

The district court properly denied Nieman's motion to suppress.

III

Accordingly, we affirm the judgment of the district court.

_____