**STATE of Iowa, Appellee,**

v.

**Steven Eugene MITCHELL, Appellant.**

**No. 92–75.**

Supreme Court of Iowa.

April 21, 1993.

Linda Del Gallo, State Appellate Defender, and Elizabeth E. Quinlan, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Julie Halligan Brown, Asst. Atty. Gen., Thomas J. Ferguson, County Atty., and Anthony Janney, Asst. County Atty., for appellee.

Considered by Harris, P.J., and Larson, Schultz, Lavorato, and Andreasen, JJ.

ANDREASEN, Justice.

In this case we must decide if an initial stop of the defendant's vehicle is a violation of the defendant's constitutional right to be free from unreasonable search and seizure when the peace officer's reason for stopping the vehicle was not based upon a suspicion of criminal activity but was for a vehicle equipment violation. The district court denied the defendant's motion to suppress evidence obtained as a result of the initial stop. The defendant appealed after he was convicted in a trial to the court on stipulated evidence. We affirm.

### I. *Background.*

Steven E. Mitchell was operating a motor vehicle on August 3, 1991, at approximately 11 p.m. An Iowa state patrol trooper observed the vehicle near Highways 58 and 20 and noted that one of the rear taillights was out. The trooper stopped the vehicle to issue a repair or "fix-it" ticket. There is no evidence the articulated safety concern was a pretext for a warrantless search.

The trooper requested Mitchell's driver's license and registration and asked him if he was aware his taillight was out. At this point the trooper noticed Mitchell smelled of alcohol. He asked Mitchell to accompany him back to the patrol car. Once inside the patrol car, a strong odor of alcohol was evident. When asked if he had been drinking, Mitchell stated he had consumed three drinks. After failing several field sobriety tests, Mitchell was arrested for operating a motor vehicle while intoxicated (OWI). *See* Iowa Code § 321J.2(2)(a) (1991). Mitchell's blood alcohol concentration registered as 0.139.

Mitchell filed a motion to suppress evidence obtained by the trooper as a result of the stop. He claimed the stop was unauthorized because the trooper lacked reasonable cause. At the suppression hearing the trooper testified the sole reason for the stop was the burned-out taillight. He acknowledged that no criminal violation was involved, but rather a safety issue. *See* Iowa Code § 321.387.[1] Judge James C.

---

1. Iowa Code § 321.387 was amended in 1992 and now reads:

Bauch denied Mitchell's motion. The court concluded the trooper was authorized to stop Mitchell for an equipment safety violation, and the trooper's subsequent observations provided grounds for arrest.

Mitchell waived his right to jury trial and agreed to have this case decided by the district court upon the minutes of testimony and stipulated exhibits. The case was tried to Judge Walter W. Rothschild. He found Mitchell guilty as charged and filed written findings and conclusions. The defendant waived time for sentencing and the court entered a judgment of conviction. The issue as to whether the court erred in overruling his motion to suppress evidence was preserved.

## II. *Suppression of Evidence.*

The Fourth Amendment protects persons from unreasonable searches and seizures. U.S. Const. amend. IV. Evidence obtained in violation of this guarantee is inadmissible in a criminal prosecution. *State v. Schrier,* 283 N.W.2d 338, 342 (Iowa 1979). We recognize the essence of the exclusionary rule is that evidence obtained in violation of the Fourth Amendment cannot be used in criminal proceedings against the victim of the illegal search and seizure. *See United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561, 571 (1974).

■ When a peace officer observes a traffic offense, however minor, the officer has probable cause to stop the driver of the vehicle. *Pennsylvania v. Mimms,* 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331, 337 (1977); *United States v. Cummins,* 920 F.2d 498, 500 (8th Cir.1990), *cert. denied,* — U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991). A peace officer may also stop and briefly detain a person for investigative purposes if the officer has reasonable cause to believe a crime may have occurred or criminal activity is afoot. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889, 911 (1968); *State v. Rosenstiel,* 473 N.W.2d 59, 61 (Iowa 1991). In determining if an investigatory stop of a motor vehicle is constitutionally permissible, we consider whether the articulated facts warrant intrusion on an individual's Fourth Amendment right and whether the scope of the intrusion is reasonably related to the circumstances that justified the intrusion. *State v. Cooley,* 229 N.W.2d 755, 760 (Iowa 1975). In making an assessment of the facts, we apply an objective standard: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

■ Here, Mitchell urges that the stopping of his vehicle was illegal because at the time his vehicle was stopped there were no facts or conduct that would allow the trooper to conclude that criminal activity was afoot. He correctly recognized Iowa Code section 321.387 only requires motor vehicles be equipped with "a lighted rear lamp." The district court, in denying the motion to suppress, found Mitchell's vehicle was stopped for an equipment violation. Although Mitchell could not be charged with violating section 321.387, he could be issued a fix-it memorandum under the rules and regulations adopted by the Iowa Department of Public Safety. Under these regulations, motor vehicle safety standards found in the National Traffic and Motor Vehicle Safety Act of 1966 (15 U.S.C. 1391, § 102) were adopted. 761 Iowa Admin.Code 450.1 (1990). The federal act adopted minimum standards for passenger cars, including a requirement for two red tail lamps.

We believe the Iowa State Patrol is charged with public safety duties that extend beyond crime detection and investigation. Iowa Code § 80.4. The Iowa Highway Safety Patrol, a department of public safety, has a statutory duty to enforce all laws relating to traffic on the public high-

---

Every motor vehicle and every vehicle which is being drawn at the end of a train of vehicles shall be equipped with a lighted rear lamp *or lamps,* exhibiting a red light plainly visible from a distance of five hundred feet to the rear. *All lamps and lighting equipment originally manufactured on a motor vehicle shall be kept in working condition or shall be replaced with equivalent equipment.*
Iowa Code § 321.387 (1993) (emphasis added).

ways of the state, to see that proper safety rules are observed and to give first aid to the injured. Iowa Code § 80.9(2)(b).

Police officers frequently "engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 714–15 (1973). We have recognized peace officers may act reasonably for the purpose of giving aid to a person in distress and finding information bearing upon the cause of that distress. *State v. Kersh*, 313 N.W.2d 566, 569 (Iowa 1981) (officer justified in opening vehicle door to check condition of unresponsive occupant slumped behind the wheel). The State has a valid interest in the safety of its citizens on its roads and highways. Under the circumstances, it was reasonable for the trooper to stop the Mitchell vehicle for highway safety purposes.

Our holding is consistent with that of other states that have faced a similar question. In *State v. Pinkham*, 565 A.2d 318 (Me.1989), a police officer pulled a motorist over "merely for safety reasons" arising out of an improper lane change. The stop ultimately culminated in the motorist's arrest for OWI. The Supreme Judicial Court of Maine held safety reasons alone could justify a stop. The court observed that nothing in the Fourth Amendment requires that "specific and articulable facts" relate to suspected criminal activity. The court noted that to decide otherwise would "overlook the police officer's legitimate role as a public servant to assist those in distress and to maintain and foster public safety." *Id.* at 319. Likewise, in *State v. Harrison*, 111 Ariz. 508, 509, 533 P.2d 1143, 1144 (1975), the Arizona Supreme Court held stopping a vehicle whose tire was "bouncing" was an appropriate exercise of a police officer's public safety duties consistent with the State's valid interest in the safety of its highways. And, in *State v. Oxley*, 127 N.H. 407, 503 A.2d 756, 759 (1985), the New Hampshire Supreme Court held an officer was justified in stopping a vehicle to ensure that inadequately secured furniture

did not fall from the back of the vehicle onto the public highway and endanger other drivers. *See State v. Maynard*, 114 N.H. 525, 323 A.2d 580 (1974) (upholding stop in which officer believed driver was ill).

Here, the trooper had a legitimate public safety responsibility, arising from the burned-out taillight, to stop Mitchell even though no violation of the law had occurred. When evidence is discovered in the course of performing legitimate community caretaking or public safety functions, the exclusionary rule is simply not applicable. *See State v. Garrow*, 480 N.W.2d 256, 259 (Iowa 1992) (primary purpose of exclusionary rule is to deter unlawful police conduct). Accordingly, the district court was correct in denying Mitchell's motion to suppress, and his conviction is hereby affirmed.

**AFFIRMED.**